IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kelly Wach, Bryan Bor and Leroy Jacobs, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>Prairie Farms Dairy, Inc.,<br><br>Defendant | 1:21-cv-02191<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1. Prairie Farms Dairy, Inc. ("defendant" or "Prairie Farms") manufactures, markets, labels, and sells "PREMIUM VANILLA" ice cream under its Small Batch brand, purporting to contain a non-negligible amount of extracts from vanilla beans and only natural flavoring ingredients ("Product").

I. Vanilla

2. Vanilla comes from an orchid plant that originated in Mexico where it was first cultivated.

3. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for vanilla flavorings.

4. Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract and is responsible for roughly one-third of vanilla's flavor and aroma.

5. The curing of vanilla beans induces the hydrolysis of β-D-glucoside, resulting in vanillin, at concentrations of 1-4% of dry weight of cured beans.

6. The chemical production of vanillin in the late 19th century resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

7. Vanilla's unique flavor is due to hundreds of odor-active compounds besides vanillin, such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

8. Methyl cinnamate and cinnamyl alcohol provide cinnamon and creamy notes.

9. Acetovanillone provides a sweet, honey taste.

10. P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

11. 4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

II. Consumers Seek Real Vanilla because it is a Natural Flavoring Ingredient

12. Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[1]

13. According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

14. Natural flavors, like vanilla, are the extractives or essences from a fruit or vegetable, made through natural processes, such as distillation, roasting, heating, enzymolysis or fermentation. *See* 21 C.F.R. § 101.22(a)(3).

---

[1] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

2

15. Artificial flavors are made from synthetic sources or through non-natural processes, such as chemical reactions. *See* 21 C.F.R. § 101.22(a)(1).

16. At least seven out of ten consumers avoid artificial flavors because they have been linked to detrimental health effects, contain synthetic ingredients and are highly processed.

17. All demographics of consumers, from Generation Z to Baby Boomers – say they would pay more for foods with no artificial flavors because they are perceived as more natural.

18. Defendant is aware of consumers' preferences, which is why it promises "PREMIUM VANILLA," "Natural Ingredients" and only "Natural Flavors."

19. Regulations of Wisconsin and Illinois incorporate federal requirements and require companies to truthfully disclose the source of a food's flavor and if it is natural or artificial.

20. Consumers distinguish ice cream flavored with extracts from vanilla beans from those containing artificial vanilla flavor by relying on the front label to prominently identify the product as "ARTIFICIALLY FLAVORED."





III. Defendant's Representations are Misleading

21. Defendant's front label representations include "PREMIUM VANILLA Ice Cream," "Small Batch," "Farmer Owned," "Made with Local Milk & Cream," "Natural Ingredients," pictures of a cow and a yellow-hued scoop of ice cream nestled in a waffle cone.



22. The side of the Product promises only "NATURAL COLORS AND FLAVORS."



23. Consumers observe "PREMIUM VANILLA" in all capital letters, dwarfing the smaller words below, "Ice Cream."

24. The other statements – "Small Batch," "Farmer Owned," "Made with Local Milk & Cream" and "Natural Ingredients" – are not capitalized.

5

25. The word "VANILLA" is larger than any statement on the label, even bigger than the name of the company, "Prairie Farms."

26. The second largest word is "PREMIUM."

27. "Premium" is defined as "of exceptional quality or greater value than others of its kind; superior; of higher price or cost."[2]

28. Extracts from vanilla beans are known as an "exceptional quality" of vanilla flavoring ingredient, and "greater value than others of its kind," including synthetic flavoring.

29. The statement "Natural Ingredients" tells consumers that the Product will contain a non-negligible amount of "Premium Vanilla" ingredients – extracts from vanilla beans.

30. A non-negligible amount of extract from vanilla beans is an amount sufficient such that a vanilla taste does not need to be boosted by synthetic vanillin.

31. Extracts from vanilla beans are natural ingredients because they consist only of the flavoring principles from the seed pods of vanilla beans.



---

[2] Dictionary.com, premium.

32. "Small Batch" connotes "a type of small-scale production in which goods are made in limited quantities, often by means of traditional or artisanal methods."³

33. Since extracts of vanilla beans are a premium price, it is logical to expect this high value ingredient would be used in a product represented as not made through mass production, but with "traditional or artisanal methods."

34. Extracts of vanilla beans are made through traditional methods – the extraction of the flavoring constituents in alcohol (vanilla extract).⁴



35. The representations – "Vanilla," "Premium," "Small Batch," "Natural Ingredients" and "Natural Colors and Flavors" – tell consumers the Product will contain a non-negligible amount of extracts from vanilla beans.

---

³ Lexico.com, small-batch.
⁴ Jeanine Friesen, Homemade Vanilla Extract, Faithfully Gluten Free, Sept. 18, 2013.

7

36. Reasonable consumers who scrutinize the ingredient list will not know that the "Natural Flavor" contains a negligible amount of extracts from vanilla beans but is mainly synthetic vanilla flavoring.

**INGREDIENTS:** CREAM, MILK, SUGAR, SKIM MILK, WHEY, STABILIZER (MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM AND CARRAGEENAN), NATURAL FLAVOR, ANNATTO (COLOR).

37. According to Professor Scott Rankin, a dairy expert and food science professor at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."[5]

38. For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

39. The "Natural Flavor" may contain a trace or de minimis amount of vanilla, but mainly contains artificial vanilla flavor (vanillin).

---

[5] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015.

8

40. Laboratory testing of the Product in 2020 and/or 2021 isolated key vanilla flavor compounds, revealing the amount of vanillin was disproportionately greater than if it was only present due to extracts from the vanilla bean.

41. Natural vanillin from extracts of vanilla beans is not isolated commercially, because it is the most important part of vanilla's flavor.

42. The vanillin was unaccompanied by the expected amounts of key compounds from the vanilla plant – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

43. The conclusion is that the Product contains a negligible amount of extracts from vanilla beans, and its "vanilla" taste is not from the "natural ingredients," "natural flavor" or "Premium Vanilla" promised, but from synthetic, non-natural flavorings.

44. The source of the synthetic vanillin is guaiacol, based on its detection at atypically elevated levels, not explained by relation to any other compounds.

45. Guaiacol, a petrochemical precursor, is the source of 85% of synthetic vanillin and is obtained from synthetic benzene and propylene, whose industrial source is petroleum.

46. Converting guaiacol to vanillin requires chemical reactions, such as condensation with glyoxylic acid, decarboxylation, chemical catalysts such as sodium hydroxide or sodium chloride and aromatic substitution.

47. Vanillin from guaiacol is an artificial flavor because it is from an artificial source and made through artificial processes. *See* 21 C.F.R. § 101.22(a)(1).

48. A reasonable consumer cannot perform laboratory testing in the grocery store aisle to find out this information.

49. Nor can a reasonable consumer seek clarification from the ingredient list, because defendant identifies the flavoring as "Natural Flavor," conflating natural and artificial flavoring and deceiving consumers.

50. Defendant is required to identify the flavoring by its specific name, vanillin or "artificial flavor," on the ingredient list.[6]

IV. Addition of Annatto Furthers Misrepresentation about Product Containing "PREMIUM VANILLA"

51. The Product's ingredients include "ANNATTO," used as a food coloring.[7]

52. The addition of annatto is misleading because it darkens the ice cream, closer to the color of extracts of vanilla beans.



53. The darker color made plaintiffs and consumers expect the Product had more extract from vanilla beans than it did.

54. Because the Product contains artificial vanilla and hardly any real vanilla, the Product lacks a vanilla taste because of the absence of the critical odor-active compounds in vanilla.

---

[6] In addition to the "Natural Flavor," assuming the Product contains a de minimis amount of extracts from vanilla beans.
[7] "Annatto (Color)."

10

55. Representing the Product as "PREMIUM VANILLA" instead of "Artificially Flavored Vanilla" is deceptive and misleading to consumers and violates labeling requirements. 21 C.FR. §135.110(f)(2)(iii).

56. Consumers cannot know that the Product has a de minimis amount of the "PREMIUM VANILLA" ingredients and a high level of synthetic flavoring.

V. Conclusion

57. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

58. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

59. Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

60. Had Plaintiffs and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

61. Plaintiffs paid more for the Product based on the representations than they would have otherwise paid.

62. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $5.29 for 1.5 QT, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

63. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

64. Plaintiff Kelly Wach is a citizen of Wisconsin.

65. Defendant Prairie Farms Dairy, Inc. is a Illinois agricultural cooperative corporation with a principal place of business in Edwardsville, Madison County, Illinois.

66. Diversity exists because plaintiff Kelly Wach and defendant are citizens of different states.

67. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

68. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of plaintiffs Bryan Bor and Leroy Jacobs.

69. Venue is further supported because many class members reside in this District.

## Parties

70. Plaintiff Kelly Wach is a citizen of Green Bay, Brown County, Wisconsin.

71. Plaintiff Bryan Bor is a citizen of Chicago, Cook County, Illinois.

72. Plaintiff Leroy Jacobs is a citizen of Chicago, Cook County, Illinois.

73. Defendant Prairie Farms Dairy, Inc. is a Illinois dairy cooperative corporation with a principal place of business in Edwardsville, Illinois, Madison County.

74. Defendant markets, distributes, and sells a variety of organic dairy products and is a leading organic dairy producer.

75. Plaintiff Wach bought the Product on one or more occasions, including on or around February 12, 2020, at locations including Woodmans, 2400 Duck Creek Pkwy, Green Bay, WI 54303.

76. Plaintiff Bor bought the Product on one or more occasions, including in or around the second half of 2020, at locations including Jewel Osco, 2520 N Narragansett Ave, Chicago, IL 60639.

77. Plaintiff Jacobs bought the Product on one or more occasions, including in or around the second half of 2019, at locations including Tony's Fresh Market, 5233 N Lincoln Ave, Chicago IL 60625.

78. Plaintiffs bought the Product at or exceeding the above-referenced price because they wanted to buy a product with "PREMIUM VANILLA" ingredients, only "natural ingredients" and only "natural flavor."

79. Plaintiffs understood "small batch" to mean the Product was made in a traditional, artisanal manner.

80. Plaintiffs expected the Product to have a non-negligible amount of extracts from vanilla beans.

81. Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

82. The Product was worth less than what Plaintiffs paid and they would not have paid as much absent Defendant's false and misleading statements and omissions.

83. Plaintiffs intend to, seek to, and will purchase the Product again when they can do so with the assurance that Product's labeling is consistent with its composition.

Class Allegations

84. The class will consist of all purchasers of the Product who reside in Wisconsin, Illinois, Ohio, Michigan, Minnesota and Iowa during the applicable statutes of limitations.

85. Plaintiffs seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

86. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

87. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

88. Plaintiffs are adequate representative because their interests do not conflict with other members.

89. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

90. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

91. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

92. Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
("ICFA"), 815 ILCS 505/1, et seq.

<u>Wisconsin Deceptive Trade Practices Act</u>
("DPTA"), Wis. Stat. § 100.20

(and Consumer Protection Statutes of Other States)

93. Plaintiffs incorporate by reference all preceding paragraphs.

94. Wis. Stat. § 100.20 prohibits "unfair trade practices" that violate orders from the Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP").

95. Wis. Stat. § 100.20(5) authorizes a private right of action to:

Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

96. Violations of ch. ATCP 90 may be pursued by private parties under § 100.20(5).

97. Plaintiff Wach suffered a pecuniary loss due to Prairie Farms' violation of WIS. ADMIN. CODE §§ ATCP 90.02 and 90.10.

98. Wis. ADMIN. CODE § ATCP 90.02 requires clear and conspicuous labeling as to a product's identity and requires that its declaration of identity not be false, deceptive, or misleading.

99. Defendant violates § ATCP 90.02(1) because the Product's declaration of "Vanilla Ice Cream" and/or "PREMIUM VANILLA Ice Cream" is not its common or usual name.

100. The common or usual name of the Product is Artificially Flavored Vanilla Ice Cream.

101. Wis. ADMIN. CODE § ATCP 90.02(3) prohibits deceptive declarations about a product and requires that the declaration of identity under § ATCP 90.02(1) not be false, deceptive, or misleading.

102. Wis. ADMIN. CODE § ATCP 90.02(3) prohibits the declaration of identity from featuring and/or naming ingredients or components that are not present in the commodity in substantial or significantly effective amounts.

103. Defendant violates Wis. ADMIN. CODE § ATCP 90.02(3) because the declaration of "Vanilla Ice Cream" and/or "Premium Vanilla Ice Cream" is false, deceptive and misleading because the Product has a de minimis amount of vanilla and its purported vanilla taste is provided by artificial flavor.

104. Defendant violates Wis. ADMIN. CODE § ATCP 90.02(3) because the declaration of identity contains the words "vanilla" and/or "premium vanilla."

105. Vanilla flavor from extracts from vanilla beans is not present in the Product in substantial or significantly effective amounts.

106. Wis. ADMIN. CODE § ATCP 90.10(2) requires that food sold in Wisconsin be labeled in compliance with applicable rules adopted by the United States Food and Drug Administration under 21 C.F.R. Parts 101, 102 and 130.

107. 21 C.F.R. Part 130 ("Food Standards") sets out guidelines for standards of identity, and encompasses the ice cream flavor requirements.

108. The relevant regulations require that where ice cream "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g.," vanilla.

109. Defendant's Vanilla Ice Cream contains artificial flavor, yet this is not disclosed, as required. 21 C.F.R. §135.110(f)(2)(iii).

110. Defendant's actions constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et. seq.

16

111. Plaintiffs and class members desired to purchase products with the attributes highlighted by the labeling and marketing – "premium vanilla," "natural ingredients," only "natural flavor" and made in "small batch[es]," understood by them to connote quality dairy ingredients, high quality flavoring ingredients – extracts from vanilla beans and that were organic.

112. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

113. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

114. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

115. The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, certification, compositional, organoleptic, sensory and/or nutritional qualities which it did not.

116. The presence or absence of these qualities was expressly and impliedly warranted to Plaintiffs.

117. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

118. This duty is based on Defendant's outsized role in the market for this type of Product – one of the largest most respected dairy producers in the Midwest.

119. Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

120. Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors and consumers to its main offices over the past several years.

121. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

122. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

123. Defendant had a duty to truthfully represent the Product, which it breached.

124. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type – a Midwest dairy conglomerate and historic leader in the industry.

125. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

126. Plaintiffs reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

127. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

128. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

129. Defendant's fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not doing so would mislead consumers.

<u>Unjust Enrichment</u>

130.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 22, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080

Fax: (516) 234-7800
spencer@spencersheehan.com

Case: 1:21-cv-02191 Document #: 1 Filed: 04/22/21 Page 20 of 20 PageID #:20