```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

| | |
|---|---|
| Kelly Wach, Bryan Bor and Leroy Jacobs, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br> v.<br><br>Prairie Farms Dairy, Inc.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 21 C 2191<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

In this putative class action, plaintiffs Kelly Wach, Bryan Bor, and Leroy Jacobs sue defendant Prairie Farms Dairy, Inc., for what they claim are false, deceptive, and misleading statements on the label of defendant's "Premium Vanilla" ice cream. Defendant moves to dismiss the complaint in its entirety. For the following reasons, I grant the motion.

I.

For purposes of this motion, I accept the factual allegations in the First Amended Complaint ("FAC") as true and draw all permissible inferences in favor of plaintiffs. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 349 (7th Cir. 2022) (citation omitted).

Prairie Farms Dairy manufactures, markets, labels, and sells "Premium Vanilla" ice cream (the "Product") purportedly flavored

with "natural vanilla flavorings." FAC ¶¶ 1, 26. Plaintiffs allege that the Product label's "Premium Vanilla," "Natural Ingredients," and "Natural...Flavors" designations are misleading because the Product contains only a negligible amount of extract from vanilla beans and derives its vanilla flavor from artificial flavorings. *Id.* ¶ 36 ("The 'Natural Flavor' contains a trace or de minimis amount of vanilla, but mainly gets its vanilla taste from vanillin from non-vanilla sources, considered an artificial flavor in the context of ice cream."). In the FAC, plaintiffs include images of the Product labeling, which are reproduced below. *Id.* ¶¶ 18-19.





2

According to the FAC, consumers desire products made with "real" vanilla. *See id.* ¶ 11 ("Demand for real vanilla has been steadily increasing." (citation and internal quotation marks omitted)). Based on the phrases "Premium Vanilla" and "Natural Flavors" on the Product's label, plaintiffs "expected the Product to have a non-negligible amount of extracts from vanilla beans." *Id.* ¶ 80. They maintain that they "would not have purchased the Product in the absence of Defendant's misrepresentations and omissions." *Id.* ¶ 81. Plaintiffs assert the following claims on behalf of themselves and three putative classes: (1) violation of Wis. Stat. § 100.20;[1] (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; (3) violations of other states' consumer fraud acts; (4) breach of express and implied warranties; (5) violation of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; (6) negligent misrepresentation; (7) common law fraud; and (8) unjust enrichment. FAC ¶¶ 93–136. Plaintiffs seek monetary damages and injunctive relief. I have jurisdiction under 28 U.S.C. § 1332(d)(2).

II.

---

[1] As the court in *Tropp v. Prairie Farms Dairy, Inc.* observed, although "[t]he parties refer to this statute as the 'Unfair Trade Practices Act,...neither the statute itself nor case law construing it have given the statute that name." No. 20-cv-1035-jdp, 2021 WL 5416639, at *2 (W.D. Wis. Nov. 19, 2021). Accordingly, I will refer to the statute by its number.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128 (7th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). I "accept well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor," *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060-61 (7th Cir. 2020) (citation omitted), but I am "not bound to accept legal conclusions as true," *Burger v. Cnty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citing *Iqbal*, 566 U.S. at 678).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

### III.

I begin with plaintiffs' claim under Wisconsin's consumer fraud statute, Wis. Stat. § 100.20, which requires little comment, as plaintiffs fail to respond to defendant's arguments for its dismissal. *See Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018) ("[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss." (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995)). In view of plaintiffs' silence, summary dismissal of their Wis. Stat. § 100.20 claim is appropriate.

IV.

Next, I turn to plaintiffs' ICFA claim. To state a claim under ICFA, plaintiffs must allege with particularity: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiffs rely on the deceptive act; (3) that the deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage as a result of the deceptive act. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014)). As explained below, plaintiffs have failed adequately to allege the first element: the presence of a deceptive act or practice by Defendant.

Under ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (citing *People ex rel. Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. 1991)). Courts apply the "reasonable consumer" standard to ICFA claims, meaning that plaintiffs must adequately allege that the Product's label was "likely to deceive reasonable consumers." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972-73 (7th Cir. 2020) (citations omitted). Where, as here, an ICFA claim "rests on allegations of deceptive conduct," the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citation and internal quotation marks omitted).

"ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015). However, dismissal at the pleading stage may be appropriate if the statement at issue is not misleading as a matter of law. *See id.*; *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477-78 (7th Cir. 2020) ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." (citations omitted)); *see also Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2019 WL

6

3555383, at *6 (N.D. Ill. July 30, 2019) ("[C]ourts routinely analyze whether statements like these are deceptive as a matter of law under the ICFA.").

Plaintiffs argue that the Product's label "tell[s] consumers the Product will contain a non-negligible amount of extracts from vanilla beans." FAC ¶ 32. According to plaintiffs, this is deceptive and misleading because the Product contains only a "trace or de minimis amount of vanilla" and "mainly gets its vanilla taste from vanillin from non-vanilla sources, considered an artificial flavor in the context of ice cream." *Id.* ¶ 36. Defendant argues that plaintiffs' ICFA claim fails as a matter of law because plaintiffs have failed to plausibly allege that the Product's labeling would deceive a reasonable consumer. Def's Mot. at 4-9.

While I accept the truth of plaintiffs' factual allegation that the Product gets most of its vanilla taste from sources other than vanilla beans, their allegations about consumer expectations—i.e., that a reasonable consumer would expect a product labeled "Premium Vanilla Ice Cream" to contain a non-negligible amount of extracts from vanilla beans, or to include only real vanilla flavoring—are conclusory statements that I need not accept. *See Iqbal*, 556 U.S. at 678. The label does not state that the Product is flavored exclusively or even mostly by vanilla beans. Indeed, it nowhere displays the words "vanilla bean" or "vanilla extract," much less any statements conveying that the Product is "made with

7

vanilla beans" or "made with vanilla extract." *See Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *3 (S.D.N.Y. Oct. 27, 2020) ("[T]he label on Defendant's protein drink does not state that it is 'made with vanilla extract' or even contain the words 'vanilla extract.'"). Thus, this case is distinguishable from *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94 (E.D.N.Y. 2020), and *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668 (N.D. Cal. 2021), where the label at issue—which read "*Made With* Aged Vanilla" (emphasis added)—could be understood to advertise vanilla as an ingredient. *See Sharpe*, 481 F. Supp. 3d at 102-03 (explaining that the label in that case "falsely implies that any vanilla content derives predominantly from the vanilla plant"); *Dailey*, 519 F. Supp. 3d at 670 (adopting the reasoning in *Sharpe* for a materially identical label).

Ice cream is routinely identified by its flavor, not by its ingredients. *See, e.g., Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 162 (S.D.N.Y. 2021) ("A reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim."). When a parent decides to take her child out for ice cream, she does not ask the child what ingredients he wants. Instead, she asks, "What flavor do you want?" And a reasonable answer to this question is, "Vanilla, please." As one district court in this circuit explained:

> Ice cream comes in many varieties: mint, banana, pistachio, bubble gum, birthday cake, just to name a few. A reasonable consumer would not assume from the name of the variety alone that the ice cream was flavored *by* the food identified in the name. Rather, the name indicates what flavor the ice cream will have.

*Tropp*, 2021 WL 5416639, at *5 (emphasis in original). Of course, a reasonable consumer may be interested in an ice cream's ingredients. But "[t]hose interested in the actual ingredients can read the [ingredients] list." *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020).

As defendant points out, numerous similar actions challenging products labeled as "Vanilla" have recently arisen in various jurisdictions, leaving in their wake a trail of dismissals.[2] Many

---

[2] *See, e.g., Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235 (S.D.N.Y. 2021) (vanilla ice cream dessert bars); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667 (S.D.N.Y. 2021) (vanilla energy drink); *Twohig*, 519 F. Supp. 3d 154 (vanilla soymilk); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) (vanilla chai tea mix); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021) (vanilla soymilk); *Steele*, 472 F. Supp. 3d 47 (vanilla ice cream); *Tropp*, 2021 WL 5416639 (vanilla ice cream); *Zahora v. Orgain LLC*, No 21 C 705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) (vanilla shake); *Garadi v. Mars Wrigley Confectionery US, LLC*, Nos. 19-cv-03209 (RJD) (ST), 21-cv-1996 (RJD) (ST), 2021 WL 2843137 (E.D.N.Y. July 6, 2021) (vanilla ice cream bars); *Fahey v. Whole Foods Mkt., Inc.*, No. 20-cv-06737-JST, 2021 WL 2816919 (N.D. Cal. June 30, 2021) (vanilla almond milk); *Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) (vanilla almond cereal); *Clark v. Westbrae Nat., Inc.*, No. 20-cv-03221-JSC, 2021 WL 1580827 (N.D. Cal. Apr. 22, 2021) (vanilla soymilk); *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) (vanilla ice cream); *Wynn v. Topco Assocs., LLC*, No. 19-cv-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) (vanilla almond milk); *Cosgrove v. Blue Diamond Growers*, 19 Civ. 8993 (VM), 2020

of these decisions have noted that labeling a product as "vanilla" does not convey to a reasonable consumer that the product's flavor derives mostly or exclusively from vanilla beans. *See, e.g.*, *Zahora*, 2021 WL 5140504, at *4 ("[A] reasonable consumer's reading of the label would only lead her to expect a vanilla bean *flavor* from the Product, however that flavor might be derived." (emphasis in original)); *Clark*, 2021 WL 1580827, at *2 ("[A]s this Court and numerous other courts considering challenges to the use of the word 'vanilla' in food descriptions have held, there is nothing about the word 'vanilla' itself which suggests to the reasonable consumer that the flavor comes *exclusively* from the vanilla bean." (emphasis in original) (citing *Twohig*, 2021 WL 518021, at *3; *Harris*, 2021 WL 2172833, at *2)). I find the core reasoning in this litany of cases persuasive.

Plaintiffs attempt to distinguish these cases by arguing that this Product's label promises "Premium Vanilla" (as opposed to simply "Vanilla") and "Natural Ingredients." *See* Pls' Resp. at 5–6; FAC ¶ 26. As to the word "Premium," that word most naturally

---

WL 7211218 (S.D.N.Y. Dec. 7, 2020) (vanilla almond milk); *Pichardo*, 2020 WL 6323775 (vanilla-flavored protein drink).

Apparently, *Dailey* and *Sharpe* are the only cases of this kind to have survived dismissal. As discussed above, both involved a label reading "Made With Aged Vanilla." *See Dailey*, 519 F. Supp. 3d at 670; *Sharpe*, 481 F. Supp. 3d at 96. Such labels may well communicate ingredient information to a reasonable consumer, but the label in this case does not.

10

qualifies "Vanilla Ice Cream," not just "Vanilla." And even if "Premium" is understood to qualify "Vanilla" only, plaintiffs offer no factual basis to suggest that a reasonable consumer would interpret "Premium Vanilla" to mean vanilla derived mostly or exclusively from the vanilla bean.

As to the "Natural Flavors" designation on the Product's label, plaintiffs allege that the Product in fact contains artificial flavors. It may well be misleading to label a product as containing only "Natural Flavors" if the product in fact contains some artificial flavors. *See Wynn*, 2021 WL 168541, at *5 ("If the product in fact contains undisclosed 'artificial' flavors, as opposed to real vanilla and other natural non-vanilla flavors, the ingredient list might well be misleading to a reasonable consumer."). However, as explained below, the FAC does not adequately allege that the Product contains artificial flavors.

Plaintiffs state that laboratory testing of the Product compels the conclusion "that the Product contains a negligible amount of extracts from vanilla beans, and [that] its 'vanilla' taste is not from the 'natural ingredients,' 'natural flavor' or 'Premium Vanilla' promised, but from synthetic, non-natural flavorings." FAC ¶ 40.[3] But even assuming that lab tests show that

---

[3] In support of its motion to dismiss, defendant argues that Plaintiffs' allegations about laboratory testing are conclusory

11

the vanilla in the Product does not come exclusively from the vanilla bean, plaintiffs do not plausibly allege that the Product's vanilla flavor is derived from artificial sources. In fact, plaintiffs acknowledge that vanilla flavor can be achieved through trace amounts of naturally-derived vanilla accompanied by non-vanilla flavorings such as nutmeg. *See* FAC ¶ 35 (alleging that "a trace of natural vanilla...and other flavorings such as nutmeg" can "trigger an association with vanilla"). Plaintiffs allege that lab testing detected an amount of vanillin in the Product that was "greater than [it would be] if it [were] only present due to extracts from the vanilla bean," and "atypically elevated levels (0.0803 PPM)" of guaiacol, a "petrochemical precursor" and the "source of 85% of synthetic vanillin." FAC ¶¶ 37, 42. But these allegations do not suffice to raise an inference that the Product contains artificial flavors.

According to a common dictionary, guaiacol is "a fragrant liquid or solid compound $C_7H_8O_2$ obtained by distilling guaiacum or from wood-tar creosote or made synthetically."[4] "Guaiacum," in turn, is defined as "any tree or shrub of the genus *Guaiacum*,"

---

because Plaintiffs fail to specify (1) the type of testing used, (2) the expected amounts of vanillin and other compounds, and (3) the levels of non-vanillin compounds revealed by the test. Def's Mot. at 7–8. However, at the pleading stage, Plaintiffs are not required to offer these specifics.
[4] *Guaiacol*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/medical/guaiacol (last accessed May 12, 2022).

12

which is "a genus (family Zygophyllaceae) of tropical American trees and shrubs having pinnate leaves, usually blue flowers, and capsular fruit."[5] Since guaiacol can come from natural *or* artificial sources, plaintiffs must offer some factual basis to suggest that the guaiacol detected in the Product was artificially derived. *See Barreto*, 518 F. Supp. 3d 795.

In *Barreto*, a similar case involving vanilla-flavored soymilk whose label touted "Natural Vanilla Flavor With Other Natural Flavors," the court held that the plaintiffs failed to allege a sufficient factual basis for their claim that added vanillin in the soymilk came from artificial rather than natural sources. *Id.* at 803–04. The *Barreto* plaintiffs alleged that their lab testing "detected the substance maltol and that the substance is artificial." *Id.* at 803. On a motion to dismiss, the court looked to common dictionaries to find that "maltol" can be derived either artificially or naturally and concluded that the plaintiffs failed to show facts "that would support the conclusion that the maltol is non-natural." *Id.* at 803–04. As in *Barreto*, plaintiffs here do not allege, for example, that natural and artificial guaiacol are chemically distinct, and that their lab tests detected the presence of the artificial variety. *Cf. Marotto v. Kellogg Co.*, No. 18 Civ. 3545 (AKH), 2018 WL 10667923, at *7–8 (S.D.N.Y. Nov. 29, 2018)

---

[5] *Guaiacum*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/medical/guaiacum (last accessed May 12, 2022).

("Unlike earlier cases cited by Defendants, Plaintiff specifies in detail the chemical differences between the natural and artificial forms of the ingredients and identifies differences in their manufacture."). Accordingly, their allegations concerning the presence of artificial ingredients are insufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Barreto*, 518 F. Supp. 3d at 803–04.

Plaintiffs make several additional arguments in support of their ICFA claim, none of which survives scrutiny. First, plaintiffs maintain that ingredient-specific text on the front label of the Product, including "No High Fructose Corn Syrup," "Gluten Free," "Made with Local Milk & Cream," "Natural Ingredients," and "Natural Colors and Flavors," somehow suggests that the Product's vanilla flavor is derived from vanilla beans. Pls' Resp. at 4. But this bald assertion is unaccompanied by reasoned analysis and fails to explain why the inclusion of some ingredient-specific text on the label would lead a reasonable consumer to believe that the words "Premium Vanilla" mean that vanilla beans are what give the Product its vanilla flavor.

Next, plaintiffs insist that it is "technologically feasible" to produce vanilla ice cream flavored exclusively with "vanilla ingredients." Pls' Resp. at 6. That may be true, but it does not alter the ICFA analysis, since, as explained above, labeling ice cream as "Premium Vanilla," without more, does not imply that it

14

is flavored entirely or even substantially with natural vanilla beans. Plaintiffs' reliance on *Grabowski v. Dunkin' Brands, Inc.*, in support of their argument is misplaced. No. 17 C 5069, 2017 WL 6059966 (N.D. Ill. Dec. 7, 2017). Unlike in *Grabowski*, here there is no allegation that defendant uses the word "vanilla" in its other products to indicate vanilla as an ingredient or that Prairie Farms Dairy itself sells its Product side by side with products that contain real vanilla. *See id.* at *2 ("The pleadings allege that Dunkin itself uses the word 'blueberry' to indicate to consumers that some of its products contain actual blueberries."); *id.* ("[Plaintiff] alleges that products that do contain real blueberries are sold side by side with products that contain the fake blueberries.").

Finally, plaintiffs assert that defendants should adopt the "approach" of other ice cream brands and market the Product as "artificially flavored." Pls' Resp. at 6–7. In support of this assertion, plaintiffs reference certain federal Food & Drug Administration (FDA) regulations that they suggest require defendant to label its Product as "artificially flavored." *See id.* at 7 (citing 21 C.F.R. § 135.110(f)(2)(i); 21 C.F.R. § 135.110(f)(2)(iii)). However, because 21 U.S.C. § 337 leaves enforcement of regulations promulgated under the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–92, to the federal government (or, for some provisions, to the states), plaintiffs cannot bring a

15

claim for violation of these regulations. *See Zahora*, 2021 WL 5140504, at *4. Insofar as plaintiffs' assertion is meant to show that a reasonable consumer would be aware of these regulations, and thus would expect defendant's Product to be labeled as "artificially flavored," the FAC lacks factual allegations to support such an argument. *See Wynn*, 2021 WL 168541, at *3 ("[E]ven if Plaintiffs are correct about what the federal regulations require...the complaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations.").

I conclude that plaintiffs' allegations do not plausibly suggest that a reasonable consumer would be misled by the Product's label. Accordingly, their ICFA claim is dismissed.

V.

Plaintiffs' remaining claims are for violations of unspecified other state consumer fraud acts, breach of express and implied warranties, violation of the Magnuson Moss Warranty Act ("MMWA"), negligent misrepresentation, common law fraud, and unjust enrichment. FAC ¶ 117-36. Like their ICFA claim, each of these claims is premised on the assertion that the Product's labeling is false, deceptive, and misleading. *See* FAC ¶¶ 118 (alleging breach of other states' consumer fraud acts because "Defendant intended that plaintiffs...would rely upon its

16

deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct"), 127 (alleging breach of express warranty, implied warranty, and violation of the MMWA because "[t]he Product did not conform to its affirmations of fact and promises due to defendant's actions"), 129 (alleging negligent misrepresentation because "Defendant had a duty to truthfully represent the Product, which it breached"), 134 (alleging common law fraud because "Defendant misrepresented and/or omitted the attributes and qualities of the Product"), 136 (alleging unjust enrichment because "Defendant obtained benefits and monies because the Product was not as represented and expected"). Accordingly, my conclusion that the Product's labeling is not false, misleading, or deceptive as a matter of law is fatal to these claims as well.[6] *See Zahora*, 2021 WL 5140504, at *5 (dismissing similar additional claims because they were premised on the assertion that the product's label was false, deceptive, and misleading).

VI.

For the reasons above, defendant's motion to dismiss is granted without prejudice. To the extent plaintiffs have a good faith basis for filing a second amended complaint, they must do so

---

[6] Because I conclude that plaintiffs have stated no actionable claim, I need not reach defendant's argument that plaintiffs lack standing to pursue injunctive relief.

17

by June 20, 2022 barring which dismissal of the FAC will be with prejudice.

                                 **ENTER ORDER:**

                                 */s/ Elaine E. Bucklo*
                                 **Elaine E. Bucklo**
                          United States District Judge

Dated: May 19, 2022